1

2

3

4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

5

6

James D. Griepsma,

Case No. 2:21-cv-00302-LK-TLF

7

                              Plaintiff,

8

         v.

REPORT AND
RECOMMENDATION

9

Christian J. Anderson et. al.,

NOTING DATE DECEMBER 2,
2022

10

                              Defendants.

11

INTRODUCTION

12

        Plaintiff James Griepsma (who is no longer in custody, he is unrepresented, and

13

proceeds *in forma pauperis*) brings this civil rights action pursuant to 42 U.S.C. § 1983,

14

raising claims relating to his confinement at Monroe Correctional Complex ("MCC") and

15

Washington Corrections Center ("WCC"). He names the following Washington State

16

Department of Corrections ("DOC") employees as defendants: Brandon Webb, Vitaliy

17

Boychenko, Jonathan Scott, Mickey Alvis, Jacob Grillo, Joan Palmer and Daniel White[1]

18

(collectively, the "DOC defendants"). Dkt. 43 (Amended Complaint). Jacob Grillo was

19

voluntarily dismissed as a defendant. Dkt. 207.

20

        DOC defendants filed a motion for summary judgment (Dkt. 115). Plaintiff filed an

21

objection (Dkt. 123) and relies on his declarations (Dkts 125 and 132). The Court has

22

23

[1] Plaintiff names Christian Anderson, Guillermo Garcia, Jackson Stramler, Douglas Faddis and Cameron
Banas (collectively, the "Skagit County defendants") as defendants as well. Claims raised against these
defendants will be addressed in a separate Report and Recommendation.

24

25

REPORT AND RECOMMENDATION - 1

1   already stricken plaintiff's superfluous responses (Dkts. 139, 163) to DOC's summary

2   judgment motion. Dkt. 210. DOC defendants filed a reply. Dkt. 134. This matter has

3   been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v.*

4   *Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4).

5       Having considered the pending motion, the documents filed in support and in

6   opposition, and the remainder of the record, the undersigned recommends DOC

7   defendants' motion for summary judgment be GRANTED.

8                           DISCUSSION

9   **A.    Summary Judgment Standard**

10      Summary judgment is proper when the pleadings, discovery and affidavits "show

11  that there is no genuine issue as to any material fact and that the moving party is

12  entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c*); Celotex Corp. v. Catrett*,

13  477 U.S. 317, 322 (1986). Material facts are those which may affect the outcome of the

14  case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a

15  material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a

16  verdict for the nonmoving party. *Id*.

17      When applying these standards, the Court must draw all reasonable inferences

18  in favor of the non-moving party. *United States v. Johnson Controls, Inc.*, 457 F.3d

19  1009, 1013 (9th Cir.2006). The moving party can carry its initial burden by producing

20  affirmative evidence that negates an essential element of the nonmovant's case, or by

21  establishing that the nonmovant lacks the quantum of evidence needed to satisfy their

22  burden of persuasion at trial. *Block v. City of Los Angeles*, 253 F.3d 410, 416 (9th Cir.

23  2001).

24

25

If this has occurred, the procedural burden shifts to the party opposing summary judgment. The party opposing the motion must go beyond the pleadings and affirmatively establish a genuine issue on the merits of their case. Fed.R.Civ.P. 56(e). The nonmoving party must do more than simply deny the veracity of everything offered or show a mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence is likewise insufficient to create a genuine factual dispute. *Anderson*, 477 U.S. at 252.

The nonmoving party must demonstrate that the disputed fact is material, and that the dispute is genuine. *Id*. at 248–49. The nonmoving party's failure of proof "renders all other facts immaterial," creating no genuine issue of fact and the Court should grant the moving party's summary judgment motion. *Celotex Corp.*, 477 U.S. at 323. However, if there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then the Court should not grant summary judgment. *Anderson*, 477 U.S. at 250.

**B.    Factual Allegations**

On April 3, 2019, plaintiff was transported from MCC to Skagit County Community Justice Center for his sentencing hearing by DOC defendants Webb, Boychenko, Alvis and Scott. *See* Dkt. 43 (Plaintiff's Amended Complaint) at 4; *see also* Dkt. 129 (Declaration of James Griepsma) at ¶3. He asserts that during the sentencing hearing, Skagit County Sheriff's deputies pinned plaintiff to the floor and punched him in the face. *See* Dkt. 129 at ¶6.

He alleges that defendant Webb grabbed plaintiff by his hair and dragged him towards a cart, while the other officers picked plaintiff up by his restraints. Dkt. 43 at 13.

1    During this altercation, plaintiff states the DOC defendants failed to intervene; thus, he

2    contends the DOC defendants acted with deliberate indifference to plaintiff's welfare in

3    violation of his Eighth and Fourteenth Amendment rights. *Id.* at 14-15; *see also* Dkt. 129

4    at ¶12.

5         Plaintiff states that he wrote a letter to defendant White, WCC's Superintendent,

6    on January 19, 2021, after contacting DOC's public records specialist requesting

7    audio/video recording of his sentencing hearing. Dkt. 43 at 13-14. DOC's public records

8    specialist informed plaintiff that she could not locate such recording, and in response to

9    plaintiff's letter to Mr. White complaining about this response, Mr. White told plaintiff that

10   DOC did not have access to county courtroom operations. *Id.* at 14.

11        Separately, plaintiff alleges defendant Palmer, a Certified Physician's Assistant

12   ("PA-C"), was deliberately indifferent to his medical concerns while he was at WCC. Dkt.

13   43 at 16; *see also* Dkt. 129 at ¶15. Plaintiff states that on June 23, 2019, July 1, 2019,

14   July 4, 2019 and August 4, 2019, he self-reported to PA-C Palmer that he was having

15   difficulty breathing. Dkt. 43 at 16. PA-C Palmer prescribed him an albuterol inhaler on

16   August 4. *Id.* Plaintiff states PA-C Palmer falsified her reports in order to deny him

17   medical treatment and did not obtain his complete medical history before treating him.

18   *Id.; see also,* Dkt. 129 at ¶15.

19        Further, plaintiff alleges that PA-C Palmer violated his First, Eighth and

20   Fourteenth Amendment rights when she denied plaintiff's request for xiphoidectomy

21   surgery based on a March 29, 2019 opinion from an outside consulting surgeon

22

23

24

25

1  recommending against surgery because it was unlikely to resolve plaintiff's ailments.

2  Dkt. 43 at 18[2].

3        Finally, plaintiff alleges that WCC Superintendent, Mr. White, violated plaintiff's

4  constitutional rights when he did not allow plaintiff and other inmates to sign up for sick

5  call because the sign-up list was full. Dkt. 43 at 18. Further, he alleges that Mr. White

6  violated his rights when Mr. White denied plaintiff's Level II grievance appeal on the

7  basis that an outside provider opined that the xiphoidectomy surgery was not medically

8  necessary. *Id.*

9  **C.    42 U.S.C. § 1983**

10       To be entitled to relief under 42 U.S.C. § 1983, a plaintiff must show: (i) the

11  conduct complained of was committed by a person acting under color of state law; and

12  (ii) the conduct deprived a person of a right, privilege, or immunity secured by the

13  Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981),

14  *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is

15  not merely a "font of tort law." *Parratt*, 451 U.S. at 532. That plaintiff may have suffered

16  harm -- even if due to another's negligent conduct -- does not in itself necessarily

17  demonstrate an abridgment of constitutional protections. *Davidson v. Cannon*, 474 U.S.

18  344, 347 (1986). The causation requirement of § 1983 is satisfied only if a plaintiff

19  demonstrates that a defendant affirmatively committed an act, participated in another's

20  affirmative act, or omitted to perform an act which they were legally required to do, that

21

22  [2] Plaintiff, in his response to defendants' motion for summary judgment, alleges for the first time that PA-C Palmer did not prescribe plaintiff certain thyroid medication and did not refer him to a respiratory therapist or outside facility. Dkt. 128 at 23. The Court will not consider these new facts. *See Navajo Nation v.*

23  *United States Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) (stating that parties generally cannot assert facts and legal theories raised for the first time at the summary judgment stage). Plaintiff cannot

24  use his response to defendants' motion as an additional attempt to amend his pleadings.

25

1 | caused the deprivation. *Id.* (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir.

2 | 1978)).

3 | In addition, government officials may not be held liable for the unconstitutional

4 | conduct of their subordinates under a theory of respondeat superior. . . . *See Monell v.*

5 | *New York City Dept. of Social Servs.*, 436 U.S. 658, 691 (1978) (finding no vicarious

6 | liability for a municipal "person" under 42 U.S.C. § 1983). Because vicarious liability is

7 | inapplicable to § 1983 suits, a plaintiff must plead that each government-official

8 | defendant, through the official's own individual actions, has violated the Constitution.

9 | **D.    Qualified Immunity**

10 | The Court should grant defendants' motion for summary judgment with respect to

11 | plaintiff's request for damages because the defendants are entitled to qualified

12 | immunity.

13 | Unless Plaintiff makes a two-part showing, qualified immunity shields

14 | government officials from liability. The plaintiff must show both: (a) that the official(s)

15 | violated a federal statutory or constitutional right and (b) that—at the time of the alleged

16 | act or failure to act—there was clearly established law that defined the contours of the

17 | federal right, such that every reasonable official would understand that what they are

18 | doing is unlawful. *Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019).

19 | When qualified immunity is reviewed in the context of a defense motion for

20 | summary judgment, the evidence must be considered in the light most favorable to the

21 | plaintiff with respect to central facts. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per

22 | curiam). If there is a genuine issue of material fact concerning both: (1) Whether it

23 | would be clear to a reasonable officer that their conduct was unlawful under the

24 | circumstances they confronted, and (2) Whether the defendant's conduct violated a

25 |

1  constitutional right" then summary judgment granting qualified immunity is not

2  appropriate. *Bonivert v. City of Clarkston*, 883 F.3d 865, 871-72 (9th Cir. 2018).

3      As discussed below, viewed in the light most favorable to plaintiff, the facts do

4  not show that defendants' acts violated plaintiff's Constitutional rights. Accordingly,

5  defendants are entitled to qualified immunity because the first prong of the qualified

6  immunity test is not satisfied.

7  **E.    Administrative Exhaustion Requirement**

8      The Prison Litigation Reform Act of 1995 ("PLRA") provides: "No action shall be

9  brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal

10  law, by a prisoner confined in any jail, prison, or other correctional facility until such

11  administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

12  Exhaustion is a prerequisite to all prisoner lawsuits concerning prison life, whether such

13  actions involve general conditions or particular episodes, whether they allege excessive

14  force or some other wrong, and even if they seek relief not available in grievance

15  proceedings, such as money damages. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

16      Inmates must not only fully exhaust available administrative remedies, but they

17  also must exhaust those remedies in a timely manner and must abide by the

18  administrative rules governing the internal grievance process. *Woodford v. Ngo*, 548

19  U.S. 81, 90 (2006). To effectively exhaust his administrative remedies, an inmate must

20  use all the formal steps of the prison grievance process. *Griffin v. Arpaio*, 557 F.3d

21  1117, 1119 (9th Cir. 2009). Because the purpose of exhaustion is to give prison

22  administrators a chance to resolve the issues, the inmate must exhaust each of his

23  claims through grievances containing enough factual specificity to notify officials of the

24  alleged harm. *Id*. at 1120.

25

Exhaustion of administrative remedies should be decided, if feasible, before reaching the merits of a prisoner's claim. *Albino v. Baca*, 737 F.3d 1162, 1170 (9th Cir. 2014).

In support of the motion for summary judgment, defendants filed the declaration of Dianna Rule, the Legal Liaison Officer at Monroe Corrections Complex. *See* Dkt. 116 (Declaration of Dianna Rule); *see generally, Jones v. Bock*, 549 U.S. 199, 216 (2007) (The defense of failure to exhaust administrative remedies is an affirmative defense, which requires defendants to submit admissible evidence). Ms. Rule avers DOC has an inmate grievance procedure in which the inmate may submit grievances pertaining to several routine matters, including conditions of confinement, staff conduct or retaliatory conduct. *Id.* at ¶6. DOC's grievance procedure consists of four levels of review. *Id.* at ¶7.

Ms. Rule reviewed plaintiff's file to see what grievances, if any, he made between the years of 2018 and 2021, and found that he did not file grievances against defendants Webb, Boychenko, Scott, or Alvis relating to the use of force incident at the Skagit County Judicial Center against plaintiff on April 3, 2019. *Id.* at ¶¶9-12.

Defendants contend, and the record supports the contention, that plaintiff failed to properly exhaust his administrative remedies regarding the use of force incident on April 3, 2019, at the Skagit County Judicial Center. "Proper" exhaustion of administrative remedies is a prerequisite to proceeding in this case. Proper exhaustion means plaintiff was required to comply "with [the prison's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. at 90-91.

Additionally, as the Court in *Jones v. Bock* stated, "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." 549 U.S. 199, 218 (2007).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Id*. at 211. The exhaustion requirement is based on the important policy concern that prison officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id*. at 204.

Defendants have established the DOC has a grievance policy, and although plaintiff filed grievances during his detention at DOC, he did not grieve his use of force incident that occurred on April 3, 2019.

Plaintiff argues he did file grievances against defendants Webb, Alvis and Boychenko. Dkt. 128 at 5-6. But, the record shows the grievance filed against Webb, Alvis and Boychenko related to the misuse of restraints on February 8, 2019, which was separate from and before the April 2019 incident. *Id*. at 5; *see also*, Dkt. 132 ("Notice and Filing of Documents in Support of Plaintiff's Response to Defendants' Motion for Summary Judgment") at 60.

The other grievance plaintiff refers to in his response was one filed against defendant Webb. Dkt. 128 at 5. Plaintiff states that in this grievance, he complained that Mr. Webb conducted an impermissible cell search. *Id*. Yet that grievance is irrelevant, because plaintiff did not assert any claims in this case regarding illegal cell searches.

1    *See generally,* Dkt. 43. Defendants have therefore established plaintiff failed to properly

2    exhaust his administrative remedies.

3        To the extent plaintiff claims he did submit a relevant grievance, a "summary

4    judgment motion cannot be defeated by relying solely on conclusory allegations

5    unsupported by factual data[,]" *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Arpin*

6    *v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001); *see also*

7    *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007) ("Bald assertions

8    that genuine issues of material fact exist are insufficient."). Plaintiff's unsupported

9    statements that he properly exhausted his administrative remedies are insufficient to

10   defeat defendant's summary judgment motion.

11       In sum, § 1997e(a) requires plaintiff to properly exhaust his administrative

12   remedies before raising a claim in a § 1983 complaint in federal court. Defendants have

13   met their burden of showing plaintiff did not properly exhaust his administrative

14   remedies as required by 42 U.S.C. § 1997e(a) with respect to his Eighth and Fourteenth

15   Amendment claims against defendants Webb, Boychenko, Alvis and Scott. Plaintiff

16   presents no evidence to the contrary and any conclusory statement that he did exhaust

17   is legally insufficient.

18       Because plaintiff failed to properly exhaust his administrative remedies, and does

19   not assert any applicable exception to the exhaustion requirement, the Court should

20   GRANT defendants' summary judgment with respect to plaintiff's Eighth and Fourteenth

21   Amendment claims against Webb, Boychenko, Alvis and Scott[3].

22

23   [3] Normally, a plaintiff's failure to exhaust administrative remedies results in a dismissal without prejudice.
     But in this case, plaintiff has been released from custody, and therefore, he is unable to cure his failure to
24   exhaust.

25

i.     Liability due to Participation in the Grievance Process

Similarly, plaintiff did not grieve his complaints against Mr. White. The alleged

incidents occurred during the time period that Mr. White allegedly prevented plaintiff

from signing up for sick-call or the time period Mr. White allegedly informed plaintiff that

he did not have access to the Skagit County audio/video surveillance from plaintiff's

sentencing hearing. Dkt. 116 at ¶14. No evidence has been submitted that grievances

relating to these events were brought by plaintiff. On this ground alone, as explained

above, these claims against Mr. White should be dismissed and summary judgment

should be GRANTED.

Plaintiff further states that Mr. White's response to plaintiff's grievance relating to the

scheduling of his xiphoidectomy surgery violated plaintiff's constitutional due process

rights. Dkt. 43 at 8; *see also* Dkt. 132 at 230. Specifically, on December 13, 2019, Mr.

White responded to plaintiff's grievance appeal and affirmed the response made at

Level One – i.e., finding that plaintiff's surgery was not medically necessary. *Id.*

Denial of a grievance, by itself, without any connection to the alleged violation of the

constitutional rights, does not establish personal participation. *See e.g., Gallagher v.*

*Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009); *see also Townsend v. Munden*, 2011

WL 666373, at *3 (W.D. Wash. Feb. 14, 2011); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.

1991) (violations of a grievance procedure do not give rise to a claim under § 1983);

*Wright v. Shapirshteyn*, 2009 WL 361951, at *3 (E.D.Cal., Feb.12, 2009) (noting that

"where a defendant's only involvement in the allegedly unconstitutional conduct is the

denial of administrative grievances, the failure to intervene on a prisoner's behalf to

remedy alleged unconstitutional behavior does not amount to active unconstitutional

1   behavior for purposes of § 1983"). Here, plaintiff has not shown that Mr. White's

2   involvement in this conduct was more than simply denying his grievance.

3       Therefore, with respect to his claim that Mr. White violated his constitutional due

4   process rights by denying his grievance, there is no basis in law for such liability and

5   summary judgment should be GRANTED.

6   **F.   Eighth Amendment**

7       To establish a constitutional violation pursuant to the Eighth Amendment due to

8   inadequate medical care, a plaintiff must show "deliberate indifference" by prison

9   officials to a "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). For an

10  inmate to state a claim under § 1983 for medical mistreatment or denial of medical care,

11  the prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate

12  indifference to serious medical needs." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Such

13  conduct is actionable under 42 U.S.C. § 1983. *See, e.g., McGuckin v. Smith*, 974 F.2d

14  1050, 1059 (9th Cir. 1992), *reversed on other grounds*, *WMX Technologies, Inc. v.*

15  *Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997). "Because society does not expect that

16  prisoners will have unqualified access to health care, deliberate indifference to medical

17  needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"

18  *Hudson*, 503 U.S. at 9.

19      In a case alleging an Eighth Amendment violation, "the appropriate inquiry when

20  an inmate alleges that prison officials failed to attend to serious medical needs is

21  whether the officials exhibited 'deliberate indifference.'" *Hudson*, 504 U.S. at 5-6. To

22  establish deliberate indifference, a prisoner must show that a defendant purposefully

23  ignored or failed to respond to the prisoner's pain or possible medical need. *See*

24  *McGuckin*, 974 F.2d at 1060. "Such indifference may be manifested in two ways. It may

25

appear when prison officials deny, delay or intentionally interfere with medical

treatment, or it may be shown by the way in which prison physicians provide medical

care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). A determination

of deliberate indifference involves an examination of two elements: the seriousness of

the prisoner's medical need and the nature of the defendant's response to that need.

*McGuckin*, 974 F.2d at 1060.

First, a "serious medical need" exists if the failure to treat a prisoner's condition

would result in further significant injury or the unnecessary and wanton infliction of pain

contrary to contemporary standards of decency. *Helling v. McKinney*, 509 U.S. 25, 32-

35; *McGuckin*, 954 F.2d at 1059. "The existence of an injury that a reasonable doctor or

patient would find important and worthy of comment or treatment; the presence of a

medical condition that significantly affects an individual's daily activities; or the existence

of chronic and substantial pain are examples of indications that a prisoner has a

'serious' need for medical treatment." *McGuckin*, 974 F.2d at 1059-60.

Second, the indifference to medical needs must be substantial; a constitutional

violation is not established by negligence or "an inadvertent failure to provide adequate

medical care." *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976); *Anthony v. Dowdle*, 853

F.2d 741, 743 (9th Cir. 1988). An official can be found liable under the Eighth

Amendment if "the official knows of and disregards an excessive risk to inmate health or

safety . . . ." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Prison officials violate their obligation by "intentionally denying or delaying access

to medical care." *Estelle*, 429 U.S. at 104–05. A difference of opinion between an

inmate and medical authorities regarding proper medical treatment does not give rise to

1  a § 1983 claim. *Franklin v. Oregon, State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir.

2  1981). Mere negligence in diagnosing or treating a medical condition, without more,

3  does not violate a prisoner's Eighth Amendment rights. *Hutchinson v. United States*,

4  838 F.2d 390, 394 (9th Cir. 1988).

5       The undisputed facts demonstrate that on August 4, 2019, PA-C Palmer

6  prescribed plaintiff an inhaler. Dkt. 43 at 16; Dkt. 115 at 24. Plaintiff, in conclusory

7  statements, states that he should have been prescribed an inhaler when he was first

8  transferred to WCC on April 8, 2019; yet the record shows he self-reported his breathing

9  difficulties for the first time on June 23, 2019. Dkt. 128 at 23. He broadly states that Ms.

10  Palmer falsified her reports and did not obtain plaintiff's full medical records. Dkt. 43 at

11  16. There is nothing in the record to demonstrate deliberate indifference. At best, the

12  allegations regarding PA-C Palmer's delay between June 23 and August 4, 2019 in

13  prescribing plaintiff's inhaler would potentially sound in state law claims of negligence.

14       Further, even if the allegation that PA-C Palmer failed to review plaintiff's full

15  medical records was accepted as true, this standing alone cannot serve to impose

16  liability under the Eighth Amendment because negligence cannot support a

17  constitutional claim. *Toguchi v. Soon Hwang Chung*, 391 F.3d 1051, 1057 (9th Cir.

18  2004) ("Mere negligence in diagnosing or treating a medical condition, without more,

19  does not violate a prisoner's Eighth Amendment rights."). Deliberate indifference is "a

20  state of mind more blameworthy than negligence" and "requires 'more than ordinary

21  lack of due care for the prisoner's interests or safety.'" *Farmer v. Brennan*, 511 U.S.

22  825, 835 (1994). In the absence of any facts that would prove deliberate indifference, no

23

24

25

1   rational trier of fact would conclude that PA-C Palmer acted with deliberate indifference

2   to plaintiff's medical needs.

3          Plaintiff further states that PA-C Palmer violated his constitutional rights when

4   she reviewed his medical records from MCC and denied his request for thoracic surgery

5   after he was transferred to WCC. Dkt. 43 at 6; *see also* Dkt. 125 at 137. PA-C Palmer,

6   in reviewing his records, concluded that surgery would not guarantee relief. Dkt. 125 at

7   233. Plaintiff's claim amounts to a mere difference in opinion of how to treat his pain,

8   which is insufficient to give rise to a § 1983 claim. *Franklin v. Oregon, State Welfare*

9   *Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981). Therefore, summary judgment should

10  therefore be GRANTED for PA-C Palmer.

11  **G.      Injunctive Relief**

12         With respect to plaintiff's requests for injunctive relief, "a request

13  for injunctive relief remains live only so long as there is some present harm left to

14  enjoin." *Bayer v. Neiman Marcus Grp.*, 861 F.3d 853, 864 (9th Cir. 2017)

15  (quoting *Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1502 (D.C. Cir. 1995))." An

16  individual in custody's "release from prison while his claims are pending generally

17  will moot any claims for injunctive relief relating to the prison's policies unless the suit

18  has been certified as a class action[,]" and "[t]he same is true for claims seeking

19  declaratory relief." *Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012). Thus, given

20  plaintiff's release from custody, plaintiff's requests for Mr. White to schedule plaintiff's

21  xiphoidectomy and to change the procedure for signing up for sick-call, and for Ms.

22  Palmer to pay for his medical expenses relating to the xiphoidectomy are moot.  Dkt. 43

23  at 20;Dkt. 212.

24

25

1    **H.    Strike under the Prisoner Litigation Reform Act ("PLRA")**

2          Defendants, in their conclusory paragraph, request that the Court rule this lawsuit

3    a strike against plaintiff under the PLRA. 28 U.S.C. § 1915(g). "Not all unsuccessful

4    cases qualify as a strike under § 1915(g)." *Andrews v. King*, 398 F.3d 1113, 1121 (9th

5    Cir. 2005). A strike applies "only when, after careful evaluation of the order dismissing

6    an action, and other relevant information, the district court determines that the action

7    was dismissed because it was frivolous, malicious, or failed to state a claim." *Id*. The

8    Ninth Circuit defines a frivolous case as one "of little weight or importance: having no

9    basis in law or fact." *Id.* (citations omitted). The Ninth Circuit also clarified that cases

10   resolved on summary judgment do not count as strikes "because they were not decided

11   on the ground that the complaint was frivolous, malicious, or failed to state a claim." *El-*

12   *Shaddai v. Zamora*, 833 F.3d 1036, 1044-45 (9th Cir. 2016) (finding consistency with

13   *Richey v. Dahne*, 807 F.3d 1202 (9th Cir. 2015), wherein the court considered evidence

14   outside the pleadings and construed a motion to dismiss on summary judgment grounds

15   and determined the dismissal did not count as a strike).

16          Because the Court recommends that plaintiff's claims should be resolved on

17   summary judgment, this dismissal would not be appropriately construed as a strike. The

18   Court therefore declines to recommend the Court count this resolution as a strike. *See*

19   *El-Shaddai, 833 F.3d at 1044-45, and Byrd v. Shannon*, 715 F.3d 117, 126 (3d Cir.

20   2013) (agreeing with the majority of circuit courts concluding a prisoner's entire action or

21   appeal must be dismissed on enumerated grounds in order for the dismissal to count as

22   a strike).

23

24

25

1

CONCLUSION

2        Based on the above discussion, the undersigned recommends the Court grant

3   defendants' motion for summary judgment. Viewed in the light most favorable to

4   plaintiff, the facts do not show a genuine dispute of material fact that defendants' acts

5   violated plaintiff's Constitutional rights. Accordingly, defendants are entitled to qualified

6   immunity because the first prong of the qualified immunity test is not satisfied. Further,

7   the Court declines to recommend that the resolution of this case on summary judgment

8   should count as a strike against plaintiff. *El-Shaddai v. Zamora*, 833 F.3d 1036, 1044-45

9   (9th Cir. 2016).

10        The parties have **fourteen (14) days** from service of this Report and

11   Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 6;

12   FRCP 72(b). Failure to file objections will result in a waiver of those objections for

13   purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985).

14        Accommodating this time limitation, this matter shall be set for consideration on

15   **December 2, 2022**, as noted in the caption.

16

17        Dated this 15th day of November, 2022.

18

19

20        *Theresa L. Fricke*

21        Theresa L. Fricke
         United States Magistrate Judge

22

23

24

25