1
2
3
4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

5

6

JAMES DAVID GRIEPSMA,

7                                        Plaintiff,

8              v.

9    CHRISTIAN J. ANDERSEN, et al.,

                                        Defendants.
10

Case No. 2:21-cv-00302-JCC-TLF

REPORT AND
RECOMMENDATION

NOTED FOR FEBRUARY 2, 2024

11          This matter comes before the Court on District Judge John C. Coughenour's

12   order instructing the undersigned to issue a revised Report and Recommendation on

13   Defendants Guillermo Garcia, Douglas Faddis and Cameron Banas's motion for

14   summary judgment. Dkt. 223, Dkt. 104. Specifically, the order requests a separate

15   analysis for each of these three Defendants[1].

16          Having considered Defendants' summary judgment motion, Judge Coughenour's

17   order, and the remainder of the record, the undersigned recommends GRANTING

18   summary judgment with respect to Defendants Garcia, Faddis and Banas. Plaintiff's

19   Eighth Amendment claims against Defendants should be DISMISSED with prejudice.

20

21   [1] Deputies Christian Anderson and Jackson Stramler are also defendants in this matter. The Court
     recommended denying summary judgment with respect to Mr. Anderson and Mr. Stramler. Judge
22   Coughenour's order did not instruct the Court to revisit its analysis with respect to Plaintiff's claims against
     Mr. Anderson or Mr. Stramler. Thus, the instant Report and Recommendation will refer to allegations
23   against these two defendants only where it is relevant to the claims against Defendants Garcia, Faddis
     and Banas; the Court otherwise relies on its Report and Recommendation with respect to Defendants
24   Anderson and Stramler. See Dkt. 218.

25

REPORT AND RECOMMENDATION - 1

DISCUSSION

**A. Summary Judgment Standard**

Summary judgment is proper when the pleadings, discovery and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

When applying these standards, the Court must draw all reasonable inferences in favor of the non-moving party. *United States v. Johnson Controls, Inc.*, 457 F.3d 1009, 1013 (9th Cir.2006). The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case, or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy their burden of persuasion at trial. *Block v. City of Los Angeles*, 253 F.3d 410, 416 (9th Cir. 2001).

If this has occurred, the procedural burden shifts to the party opposing summary judgment. The party opposing the motion must go beyond the pleadings and affirmatively establish a genuine issue on the merits of their case. Fed.R.Civ.P. 56(e). The nonmoving party must do more than simply deny the veracity of everything offered or show a mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a scintilla of

evidence is likewise insufficient to create a genuine factual dispute. *Anderson*, 477 U.S. at 252.

The nonmoving party must demonstrate that the disputed fact is material, and that the dispute is genuine. *Id.* at 248–49. The nonmoving party's failure of proof "renders all other facts immaterial," creating no genuine issue of fact and the Court should grant the moving party's summary judgment motion. *Celotex Corp.*, 477 U.S. at 323. However, if there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then the Court should not grant summary judgment. *Anderson*, 477 U.S. at 250.

**B. Factual Allegations Against Defendants Garcia, Banas, and Faddis**

On April 3, 2019, plaintiff was transported from Monroe Corrections Center to Skagit County Community Justice Center for his sentencing hearing. *See* Dkt. 43 (Plaintiff's Amended Complaint) at 4; *see also* Dkt. 124 (Declaration of Plaintiff James Griepsma) at ¶2-3. During his sentencing hearing, plaintiff spoke over the Court and prosecutor numerous times, and also voiced expletives. *See* Dkt. 105 (Declaration of Counsel Erik Pedersen) at ¶10; *see also id*. at Appendix F at 6:24-7:4. When asked to sign the final judgment and sentence, plaintiff stated that he would not sign it. *Id.* 13:4-6. However, he did request a copy. *Id.* at 13:15-25.

While plaintiff was waiting for his copy, he spat on the Deputy Prosecutor in the courtroom. Dkt. 29 (Declaration of Michelle Hansen) at Exhibit H. As a result, a Skagit County deputy sheriff placed a spit hood on plaintiff and restrained him. *Id*. Plaintiff was already wearing waist restraints with handcuffs attached and leg restraints at the ankles. *See* Dkt. 43 at ¶1.2; Dkt. 124 at ¶6; Dkt. 106 (Declaration of Christian Anderson) at ¶10.

Defendants state that plaintiff began to thrash and kick in his chair and swore at the deputies when plaintiff was asked for his fingerprints. *See* Dkt. 107 (Declaration of Cameron Banas) at ¶9; Dkt. 108 (Declaration of Douglas Faddis) at ¶9; Dkt. 109 (Declaration of Guillermo Garcia) at ¶9. Defendants assert plaintiff's behavior escalated; plaintiff pulled his legs into his chest and kicked his legs out, striking Defendant Anderson in the upper leg and groin. *See* Dkt. 106 at ¶29. Plaintiff does not refute this specific allegation.

Plaintiff was then pulled from his chair to the ground. *See* Dkt. 109 at Appendix A; Dkt. 107 at Appendix A; Dkt. 108 at Appendix A. Plaintiff states, only in his complaint, that Defendant Faddis and Banas held his legs and used the cuffs around his ankles to cut them. Dkt 43, at ¶1.2, pp. 12-13. Plaintiff also alleges Deputies Banas, Garcia, Faddis "put their hands on me, pulled me out of the chair and onto the floor. Dkt 43, at ¶1.2, at p 5. Plaintiff's declaration indicates, "Skagit Defendants pulled me out of my chair for refusing to sign and give fingerprints on the unlawful F, J & S form." Dkt. 124 at ¶15.

Defendant Faddis states in his report of the April 4, 2019 events, that when plaintiff was pulled to the ground, Defendant Faddis put his foot on the leg chain and pinned plaintiff's feet down. Dkt. 108.

Defendant Anderson claims he then observed plaintiff attempting to claw or scratch an officer with his fingernails in an effort to injure officers. *See* Dkt. 106 at ¶32.

According to plaintiff, he did not claw at or grab anyone's wrists or arms; in any case, several officers held plaintiff down on the floor while defendant Anderson punched him in the face. Dkt. 124 at ¶13, 16.

1    After defendants obtained plaintiff's fingerprints, they took plaintiff from the

2    courtroom to a hallway where plaintiff allegedly grabbed a DOC officer when he

3    attempted to resecure the spit hood. Dkt. 110 at ¶13. Defendant Banas states, he

4    thought that plaintiff may be trying to reach the DOC officer's duty belt for a firearm so

5    he applied a pressure hold near plaintiff's legs; then he saw plaintiff grab another

6    deputy. Dkt. 107 at Appendix A. Defendant Stramler asserts that he struck plaintiff so

7    that plaintiff would let go. Dkt. 110 at ¶¶15-17.

8    Plaintiff alleges that the Skagit County defendants violated his due process rights

9    and his right to be protected from cruel and unusual punishment. *See* Dkt. 43 at 4. As a

10   result of this incident, plaintiff claims that he suffered from injuries to his ribs, and he

11   sustained lacerations and bruises. *Id.* at 5.

12   Plaintiff had abrasions on his face, rib pain, a bloody nose and "superficial

13   scratches" to his forehead, cheek and chin. *See* Dkt. 105 at Appendix M. When a nurse

14   examined plaintiff on April 6, 2019, she noted that the plaintiff deflected when the nurse

15   touched him below the ribcage and there was a "presence of a contusion". *Id.* Plaintiff

16   had chest x-rays completed on June 12, 2019 and December 5, 2019; neither x-ray

17   raised concerns of abnormalities. *Id.* at Appendices N, O.

18   The Court has again reviewed the video of the sentencing hearing. The video from

19   the courtroom shows plaintiff sitting in his chair closely surrounded by three Skagit

20   County officers and two DOC officers. When plaintiff spits at the Deputy Prosecutor

21   (time stamp 11:07:43), another Skagit County deputy sheriff's officer puts a spit hood on

22   plaintiff while the other officers restrain plaintiff (time stamp 11:07:54). Defendant Banas

23

24

25

1  identified Defendant Faddis as the officer that placed the spit hood on Plaintiff. *See* Dkt.

2  107 at Appendix A.

3      The video then shows a person who appears to be Defendant Anderson bringing

4  plaintiff the judgment and sentence document (time stamp 11:08:27). The video does

5  not clearly show what occurred next.

6      Defendant Anderson claims that at this point, plaintiff hit Mr. Anderson in the upper

7  leg and groin. The plaintiff is surrounded by six officers (both DOC and Skagit County

8  officers) and is brought to the ground from his chair (time stamp 11:08:34). Plaintiff then

9  appears to be brought up from the ground, by officers lifting plaintiff from his feet and

10  arms (time stamp 11:08:56). At this point, nine officers surround plaintiff (time stamp

11  11:08:58).

12      Plaintiff is then brought back down to the ground where he is given the judgment and

13  sentence document (time stamp 11:10:12) and is shortly thereafter carried into the

14  hallway by the officers.

15      On the video from the hallway camera, the video shows plaintiff being carried into a

16  hallway and brought to the ground by officers (time stamp 11:10:54). Then, plaintiff is

17  struck (at time stamp 11:11:14) by a person who appears to be defendant Stramler at

18  least three times. During the time plaintiff is in the hallway, the video does not clearly

19  show plaintiff's body, because it is hardly visible from this camera angle as he is

20  surrounded by five officers on the ground and four standing close by.

21

22

23

24

25

C.  Eighth Amendment –Excessive Force

Plaintiff claims that his Eighth Amendment rights were violated when Defendants Garcia, Faddis and Banas "put their hands on" him and "pulled" him out of his chair and onto the floor.

When a prison official is accused of using excessive physical force against an inmate in violation of the Eighth Amendment, the central inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 7 (1992) (citing *Whitley v. Albers,* 475 U.S. 312, 320–21 (1986)). Excessive force may amount to cruel and unusual punishment even when the inmate does not suffer serious injury. *Id.* at 9–10. In deciding whether the use of force was wanton and unnecessary, the court will consider factors such as the extent of any injury, the need for the use of force, and whether that need supports the amount of force used. *Hudson,* 503 U.S. at 7. The court will also consider "any efforts made to temper the severity of a forceful response." *Id.* (quoting *Whitley,* 475 U.S. at 321).

In performing the above analysis, the Court must consider that decisions undertaken by prison officials, who are charged with the safety of prison staff, other prisoners, and visitors, are often "made in haste, under pressure, and frequently without the luxury of a second chance." *See Whitley*, 475 U.S. at 320.

In accordance with Judge Coughenour's order, the Court will analyze plaintiff's Eighth Amendment claims against each Defendant below:

i.    <u>Defendant Faddis</u>

It is undisputed that Defendant Faddis was one of the deputies holding plaintiff's legs when plaintiff was brought to the floor from his chair in the courtroom. *See* Dkt. 108 at Appendix A; Dkt. Dkt 43, at ¶1.2, pp. 12-13. It is difficult to see what exactly is occurring in certain portions of the video, but plaintiff did not allege that Defendant Faddis struck plaintiff. His claim boils down to his allegation that Defendant Faddis pulled plaintiff to the ground with force and injured plaintiff's already cuffed legs.

While the Court can certainly appreciate the fact that Defendant Faddis's action of putting his foot on the leg chain and pinning plaintiff's feet down may have been painful, it does not amount to a violation of the Eighth Amendment. Defendant Faddis was acting in a fluid environment with an uncooperative individual in the courtroom and only grabbed plaintiff's feet after plaintiff's behavior escalated. Plaintiff further did not sustain injuries to his ankles. Other than simply concluding that Defendant Faddis acted maliciously and sadistically, plaintiff did not provide any other evidence to show that Defendant Faddis's behavior rises to the level required to state an excessive force claim. Considering the extent of any injury, the need for the use of force, and whether that need supports the amount of force used, *Hudson,* 503 U.S. at 7, the record shows there was no Eighth Amendment violation.

The Court should hold that there is no genuine dispute of material facts and, on the facts as alleged by plaintiff and interpreted in the light most favorable to plaintiff, no reasonable jury could find in favor of plaintiff. Defendant Faddis's actions did not amount to an Eighth Amendment violation, and thus, summary judgment should be GRANTED with respect to plaintiff's excessive force claim against him.

ii.    <u>Defendant Banas</u>

With respect to Defendant Banas, it is undisputed that Defendant Banas helped pin Plaintiff's legs down after plaintiff's behavior escalated in the courtroom. Dkt. 107 at Appendix A; Dkt 43, at ¶1.2, at p 5. Plaintiff does not allege that Defendant Banas struck him. Defendant Banas claims that he applied a pressure hold to plaintiff's legs in the hallway afterwards; plaintiff did not raise this as a claim in his amended complaint.

The undisputed facts show that plaintiff's claim does not rise to the level of an Eighth Amendment violation. Defendant Banas reacted to an uncooperative plaintiff, and plaintiff's medical records indicate that he did not sustain injuries to his ankles. Considering the extent of any injury, the need for the use of force, and whether that need supports the amount of force used, *Hudson,* 503 U.S. at 7, the record shows there is no genuine dispute of material facts and no Eighth Amendment violation.

Thus, Defendant Banas's motion for summary judgment should be GRANTED.

iii.    <u>Defendant Garcia</u>

Finally, with respect to Defendant Garcia, it is undisputed that he assisted the other deputies in bringing plaintiff to the floor after plaintiff continued to refuse to provide his fingerprints and his behavior escalated. *See* Dkt. 109 at Appendix A; Dkt 43, at ¶1.2, at p 5. Plaintiff did not allege that Defendant Garcia struck him.

Considering the extent of any injury, the need for the use of force, and whether that need supports the amount of force used, *Hudson,* 503 U.S. at 7, the record shows there is no genuine dispute of material facts and no Eighth Amendment violation. In this case there is not sufficient evidence for a reasonable jury to return a verdict for the nonmoving party regarding Defendant Garcia's acts.

Plaintiff's only allegation against Defendant Garcia is that he pulled plaintiff out of his chair and to the ground. Therefore, summary judgment should be GRANTED.

### D. Qualified Immunity

The Court should also grant defendants' motion for summary judgment with respect to plaintiff's request for damages because the defendants are entitled to qualified immunity. Unless plaintiff makes a two-part showing, qualified immunity shields government officials from liability. The plaintiff must show both: (a) that the official(s) violated a federal statutory or constitutional right and (b) that—at the time of the alleged act or failure to act—there was clearly established law that defined the contours of the federal right, such that every reasonable official would understand that what they are doing is unlawful. *Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019).

When qualified immunity is reviewed in the context of a defense motion for summary judgment, the evidence must be considered in the light most favorable to the plaintiff with respect to central facts. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam). If there is a genuine issue of material fact concerning both: (1) Whether it would be clear to a reasonable officer that their conduct was unlawful under the circumstances they confronted, and (2) Whether the defendant's conduct violated a constitutional right" then summary judgment granting qualified immunity is not appropriate. *Bonivert v. City of Clarkson,* 883 F.3d 865, 871-72 (9th Cir. 2018). As discussed above, viewed in the light most favorable to plaintiff, the facts do not show that defendants' acts violated plaintiff's Constitutional rights. Accordingly, defendants are entitled to qualified immunity because the first prong of the qualified immunity test is not satisfied.

CONCLUSION

Based on the above discussion, the undersigned recommends the Court grant summary judgment with respect to Defendants Banas, Faddis and Garcia. Viewed in the light most favorable to plaintiff, the facts do not show a genuine dispute of material fact that defendants' acts violated plaintiff's Constitutional rights. Accordingly, defendants are entitled to qualified immunity because the first prong of the qualified immunity test is not satisfied.

The parties have fourteen (14) days from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 6; FRCP 72(b). Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating this time limitation, this matter shall be set for consideration on February 2, 2024, as noted in the caption.

Dated this 17th day of January, 2024.

Theresa L. Fricke
United States Magistrate Judge

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

NOTED FOR FEBRUARY 2, 2024 - 12